VAUGHN–GRIFFIN PACKING COMPA-
NY, Plaintiff-Appellant-Cross Appellee,

v.

Clifford HARDIN, Secretary of Agricul-
ture of the United States of America,
Defendant-Appellee-Cross Appellant.

VAUGHN–GRIFFIN PACKING COMPA-
NY, Plaintiff-Appellant,

v.

Clifford HARDIN, Secretary of Agricul-
ture of the United States of Amer-
ica, Defendant-Appellee.

Nos. 27083, 27085.

United States Court of Appeals,
Fifth Circuit.

March 23, 1970.

Charles E. Davis, Orlando, Fla., for ap-
pellant.

Thomas G. Wilson, Asst. U. S. Atty.,
Edward F. Boardman, U. S. Atty., Tam-
pa, Fla., J. C. Kraue, U. S. Dept. of Agri-
culture, Fruit & Vegetable Div., Con-
sumer and Marketing Service, Washing-
ton, D. C., Alan S. Rosenthal, Norman
Knopf, Daniel Joseph, Attys., Dept. of
Justice, Washington, D. C., for appellee.

Before TUTTLE, WISDOM and
BELL, Circuit Judges.

BELL, Circuit Judge:

The suits from which these appeals
arise challenge the validity of Marketing
Order 913 issued by the Secretary of
Agriculture, fixing shipping quotas for

grapefruit grown in the Interior District of Florida. 7 CFR, Part 913. One appeal is from an injunction restraining appellant from shipping quantities of grapefruit during regulated weeks in excess of quotas assigned under the marketing order. The other is from the adverse ruling of the district court on review of an administrative proceeding wherein appellant contested the validity of the Marketing Order. See Vaughn-Griffin Packing Company v. Freeman, M.D.Fla. 1968, 294 F.Supp. 458, for the opinion of the district court and for a full statement of the facts. We affirm.

Two questions are presented for decision. The first goes to the validity of the Marketing Order from the standpoint of the number of grapefruit handlers who entered into the marketing agreement as required by the statute. 7 U.S.C.A. § 608c(8). The statute, in pertinent part, requires that for a Marketing Order to be effective:

> " * * * the handlers * * * of not less than 50 per centum of the volume of the commodity * * * covered by such order * * * have signed a marketing agreement, entered into pursuant to [7 U.S.C. 608b] * * * which [agreement] regulates the handling of such commodity or product in the same manner as such order * * *."

The Marketing Order covered only grapefruit shipped in fresh form from the Interior District of Florida.[1] Substantially less than half of the grapefruit produced in the Interior District was shipped in fresh form. Signed marketing agreements were obtained from handlers of more than half of the fresh grapefruit shipped. The district court concluded that the commodity covered by the order was only the grapefruit shipped in fresh form and not all grapefruit produced, much of which was canned or frozen. We find this view to be correct.

The Marketing Order was promulgated for the purpose of stabilizing marketing conditions with respect to fresh grapefruit only. Handlers of frozen and canned grapefruit are expressly excepted. 30 CFR 913.55(c). The authorizing act itself distinguishes between fresh grapefruit on one hand and non-fresh grapefruit on the other by providing special and additional requirements for the issuance of an order with respect to frozen and canned grapefruit. 7 U.S.C.A., § 608c(2). Thus the requisite approval was obtained.[2]

The other question presented goes to the merits of the method of calculating the shipment prorate base for old handlers under the Marketing Order. The district court found that the method for calculating prorate bases for new handlers was invalid. 7 CFR 913.-43(e). The Secretary did not pursue his appeal from this ruling. Thus the new handler provision is no longer a part of the Marketing Order. Appellant is an old handler and it was undisputed that it had violated the Marketing Order in substantial measure by making shipments in excess of its quotas. Nevertheless, appellant contends that it should not be enjoined since it necessarily follows that its prorate base as an old handler was improperly reduced by

---

1. The geographical limits of the Interior District are defined in the Marketing Order.

2. Appellant mounted a vigorous attack during oral argument in this court against the procedure whereby some of the members of the Marketing Committee (the committee to administer the Marketing Order), are selected on a weighted vote basis depending on volume of grapefruit shipped by handlers. 7 CFR, 913:20; 7 CFR, Part 905. This weighted vote argument was apparently not asserted in the district court except to the extent of a claim that the determination of quotas was vested in large shippers to the detriment of small shippers. This claim was rejected for failure of proof. The question was not briefed in this court. In any event, the contention that a weighted vote selection system is unconstitutional cannot be asserted here for the first time. Dilworth v. Riner, 5 Cir., 1965, 343 F.2d 226, 229.

reason of the prorate bases for new handlers being excessive.

The fallacy in this argument lies in the fact that appellant's total shipments for a season were not necessarily reduced. The method of arriving at prorate bases or quotas is to calculate from annual shipments. 7 CFR, 913.43(d). The Marketing Order applied to only a few weeks in a season. Appellant was free to ship in unlimited amounts in other weeks. There is no substantial evidence of record to demonstrate that appellant's total annual shipments were reduced by any excess in the prorate bases alloted to new handlers, or that its prorate base for the future will be reduced by reason thereof. The government contends that annual shipments for new and old handlers average out over a season despite marketing quotas in some weeks. This may or may not be true. There is no evidentiary foundation for a determination one way or the other. It is sufficient to say that appellant's argument directed to allegedly improper prorate bases for old handlers is not established by the evidence.

A variation of the old handler-new handler argument directed to demonstrating the invalidity of the Marketing Order is that the prorate base for old handlers is set entirely on past shipments. New handlers have no past shipments and therefore, of necessity, they will be treated differently in the future from old handlers and thus the old handler regulation must fail. The statute provides that quotas may be set on the basis of past shipments in representative periods, or on the basis of amounts available for current shipment, or both. 7 U.S.C.A. § 608c(6) (C). We have no provision for new handlers before us for consideration. It has been stricken. We cannot assume that the Secretary will promulgate a provision for new handlers containing criteria which discriminate against old handlers. Nondiscriminatory criteria are not impossible under the statute; for example, the statutory criterion of amounts available for current shipment might well be the standard for both new and old handlers. Criteria, however, are matters for the Secretary in the first instance within the statutory confines.

Affirmed.